Cara Leslie **ALEXANDER**, et al., Plaintiffs,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Civ.A. Nos. 96–2123, 97–1288(RCL).

United States District Court, District of Columbia.

May 10, 2000.

---

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., for defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., for defendant Hillary Rodham Clinton.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion [752] to Compel Defendant Hillary Rodham Clinton to Provide Appropriate Responses to Plaintiffs' Second Requests for Production of Documents. Upon consideration of this motion, and the opposition and reply thereto, the court will GRANT IN PART AND DENY IN PART plaintiffs' motion, as discussed and ordered below.

### I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

This particular dispute revolves around the plaintiffs' second set of requests for the production of documents, which was served on defendant Hillary Rodham Clinton on October 27, 1998. Mrs. Clinton served her responses to these requests on February 1, 1999. These responses included several specific and general objections. After making these objections, Mrs. Clinton then responded to most requests by stating that "[s]ubject to these objections and without waiving them, responsive documents, to the extent they exist and are in the defendant's possession, will be produced." No documents, however, were ever produced. In response to all other requests, Mrs. Clinton refused to produce documents based on her objections to the requests as overly broad, irrelevant, unduly burdensome and redundant with the plaintiffs' first set of requests to Mrs. Clinton. After conferring with opposing counsel by telephone on June 8, 1999, plaintiffs filed their motion to compel further answers to their second set of requests on June 14, 1999.

### II. Analysis

#### 1. Request Numbers 1, 2, 17, 18 and 24.

For these requests, Mrs. Clinton argues that no responsive documents exist, or they would have been produced. In her response, Mrs. Clinton makes several objections to these requests. She first objects generally to the extent that the requests seek any documents belonging to the White House or

the Executive Office of the President ("EOP"), including the Office of the First Lady. Second, she objects that this set of requests is duplicative of the plaintiffs' first set of requests for documents, to which she has already responded. Third, Mrs. Clinton states that she has construed all requests as not seeking privileged communications. Next, Mrs. Clinton objects generally to the plaintiffs' definitions of "defendants," "government records," and "you and your" as overbroad. Finally, Mrs. Clinton objects specifically to each request as "overly broad, unduly burdensome, and seek[ing] discovery that is neither relevant to this case nor reasonably calculated to lead to the discovery of admissible evidence."

After making these objections, Mrs. Clinton states in her responses that "[s]ubject to these objections and without waiving them, responsive documents, to the extent they exist and are in the defendant's possession, will be produced." No documents, however, have been produced.

In their opposition, defense counsel assert that, as "Mrs. Clinton agreed to produce any responsive documents that existed and that were in her possession, notwithstanding her general and specific objections to the requests," the fact that no documents have been produced simply means no additional responsive documents exist. Opposition of Hillary Rodham Clinton at 9 (emphasis omitted). They further state that no documents were withheld due to privilege. Thus, they argue, given these representations, which were made to the plaintiffs during the parties' Local Rule 108(m)[1] telephone conference, the instant motion is based only on the plaintiffs' disbelief that there are no documents being withheld. Accordingly, as the plaintiffs do not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, their motion to compel must fail. *See Judicial Watch, Inc. v. United States Dep't of Commerce,* 34 F.Supp.2d 47, 53 (D.D.C.1998) (holding that in order to compel documents, the plaintiffs "must demonstrate to the Court that documents are being unlawfully with-

held, not merely posit that documents may be being wrongfully withheld.")

The plaintiffs, however, respond that their motion is not based on their refusal to believe Mrs. Clinton and her counsel's representations that there are no responsive documents. Rather, their motion rests on the fact that the representations made to them actually seem to indicate that Mrs. Clinton's search for responsive documents was legally insufficient. They argue that Mrs. Clinton simply defined away the scope of her discovery obligations before asserting that those obligations had been met. In particular, they take issue with Mrs. Clinton's statement that documents will be produced only to the extent that they are in her possession.

■ Rule 34(a) of the Federal Rules of Civil Procedure provides: "Any party may serve on any other party a request [for] ... any designated documents ... which are in the possession, custody, or control of the party upon whom the request is served." FED.R.CIV.P. 34(a). It is well established that "control", which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether the production is required. *See Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984); *Tavoulareas v. Piro,* 93 F.R.D. 11, 20 (D.D.C.1981) (both holding that under Rule 34(a), a party must produce those documents that he has a legal right to control or obtain); *see also* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy.")

■ Mrs. Clinton stated in her responses that she would produce only those documents in her possession. She did not, therefore, include in her response any documents that she does not currently possess, but that she has the legal right to obtain. Furthermore, despite the fact that the plaintiffs clearly argued in their motion that it appeared that Mrs. Clinton did not include such documents in her responses, counsel for

---

**1.** This rule is now Local Civil Rule 7.1(m) under the newly revised local rules.

Mrs. Clinton conspicuously fail to address the issue. They make no representation regarding whether documents not within Mrs. Clinton's possession, but still within her control were searched in response to the plaintiffs' requests.[2] *See* Opposition of Hillary Rodham Clinton at 10–11 (simply reiterating Mrs. Clinton's statement that she would produce any responsive documents that exist and that were in her possession and stating that no documents were produced because no additional responsive documents exist). Therefore, because both Mrs. Clinton and her defense counsel fail to represent that all responsive documents within Mrs. Clinton's control have been produced, as required by Federal Rule 34(a), the court will order that Mrs. Clinton, within twenty days of the entry of this order, submit a supplemental response. In this response, Mrs. Clinton shall explain in detail the search that was performed, including the locations searched. She shall also clearly assert whether all documents, including those not in her possession but still within her control, have been produced.

### 2. *Request Numbers 14 and 15.*

These requests seek computer hardware and "removable storage devices" used by Mrs. Clinton that contain or contained information about Travelgate, Filegate, the White House Office Database, or the obtaining or use of FBI files or government records, or the information therein. Mrs. Clinton objects to these requests on the grounds that they are duplicative of the First Set of Requests for Production served on her, which sought all documents relating in anyway to the Filegate matter, regardless of whether they were stored on a computer. Counsel for Mrs. Clinton also argue that despite the redundancy of the requests, no documents or other material responsive to these requests were withheld. *See* Affidavit of Paul Gaffney at 3 (July 1, 1999).

Plaintiffs point out that in response to their first production request, they received 72 pages of items, none of which were labeled to indicate to which of the plaintiffs' requests they correspond. They argue that, if Mrs. Clinton believed that any of the plaintiffs' second requests duplicated earlier requests to some extent, the proper response, rather than simply stating her objection, would be to specifically refer the plaintiffs to the previously-produced items.

■■■ The court agrees with this argument. As this court has already noted on numerous occasions, "[t]he party objecting to . . . discovery bears the burden of 'show[ing] why discovery should not be permitted.'" *Alexander v. FBI*, 193 F.R.D. at 2–3 (D.D.C. 2000) (quoting *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 56 (E.D.Pa.1994)); *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C.2000) (re: Third Set of Interrogatories). By simply objecting to the plaintiffs' request without specifically referring to any documents already produced or describing the relevant search already performed, Mrs. Clinton has not met her burden of demonstrating that this request is in fact "unreasonably cumulative or duplicative." Fed.R.Civ.P. 26(b)(2)(i).

Furthermore, the prior request, which Mrs. Clinton claims these requests duplicate, was for all documents relating in anyway to the Filegate matter. The requests at issue here, however, seek information not just about the Filegate matter, but also about Travelgate, the White House Office Database, and the obtaining or use of FBI files or government records in general. Most issues outside of the Filegate matter are, in fact, irrelevant to the pending case and therefore, discovery on these issues is not allowed. *See Alexander v. FBI*, 186 F.R.D. 123, 125–26 (D.D.C.1998) (holding that most matters regarding Travelgate are not relevant to the instant case).

---

**2.** Defense counsel has made this assertion in conjunction with a prior set of requests for the production of documents. *See* Letter of David E. Kendall to Larry Klayman (Dec. 12, 1997) (stating that they had produced all documents of which they are aware in Mrs. Clinton's possession, custody and control and asserting that "we have withheld no documents based on upon some distinction between, on the one hand, 'possession', and, on the other, 'custody' and 'control'.") Somewhat curiously, however, they do not ever make such an assertion in conjunction with the second set of requests at issue here.

However, there are some issues—specifically the misuse of the FBI files or other government records of Billy Dale, Linda Tripp and Kathleen Willey—that the court has found to be significantly related to, if not actually part of, the Filegate matter. Thus, the court has allowed discovery into these matters as such discovery is relevant to the pending case and reasonably calculated to lead to the discovery of admissible evidence. *See id.* (holding that the plaintiffs are entitled to inquire into the obtaining and misuse of the government file of Billy Dale, a former Travel Office employee); *Alexander v. FBI,* 186 F.R.D. 1, 4 (D.D.C.1998) (ruling that the circumstances surrounding the release of Linda Tripp's background security information is discoverable); *Alexander v. FBI,* 186 F.R.D. 113, 115 (D.D.C.1998) (allowing discovery into the release of Kathleen Willey's letters to the President as any misuse of Willey's government file could prove to be circumstantial evidence of file misuse aimed at the plaintiffs in the case at bar). These issues, while included in the instant requests, were not included in the prior request. Therefore, the requests as they relate to these matters are clearly not duplicative.

Finally, counsel for Mrs. Clinton argue that, in any event, they indicated to the plaintiffs during their Local Rule 108(m) telephone conference that there were no responsive documents to the request as drafted, and "thus there was no basis for a motion to compel." *See* Opposition of Hillary Rodham Clinton at 12. However, in light of Mrs. Clinton's objections to the requests as duplicative, it is not clear if any additional search was ever performed, or if counsel was simply relying on Mrs. Clinton's prior search when making this statement. In addition, as discussed above, it is also not clear whether this statement included all documents not only in her possession, but also in her control. Therefore, this court will order Mrs. Clinton to include the details of her search in response to these requests in the supplemental response ordered above. In this response, Mrs. Clinton should describe the parameters of the search performed in conjunction with these requests, including the specific subject areas that were covered. Once again, she should also include a clear statement that all documents within Mrs. Clinton's control have been produced. If any documents previously provided by Mrs. Clinton are responsive to these requests, Mrs. Clinton shall refer to those documents specifically.[3] If responsive documents, as defined by this opinion, do exist that have not already been produced, Mrs. Clinton shall produce them within 20 days.

### 3. *Request Number 20.*

Request number 20 seeks all correspondence between the defendants relating to the FBI files, White House passes, or security clearances. Mrs. Clinton responded that "[s]ubject to these objections, and without waiving them, correspondence 'to, from, or between' defendant, Messrs. Nussbaum, Livingstone, and Marceca, the EOP, and the FBI, which correspondence 'relat[es] to FBI files,' to the extent such correspondence exists and is in defendants' possession, will be produced." Defendant Hillary Rodham Clinton's Responses and Objections to Plaintiffs' Second Set of Requests for the Production of Documents at 14. To the extent the plaintiffs seek correspondence regarding White House passes and security clearances, however, Mrs. Clinton objects on the grounds the request is irrelevant and overbroad.[4]

**3.** Plaintiffs argue that documents are in fact being withheld. As proof that responsive documents do exist, they cite the deposition testimony of former White House Chief-of-Staff Thomas McLarty that he thinks (but is not certain) that he has seen Mrs. Clinton typing on a laptop. As counsel for Mrs. Clinton correctly note, however, this is not evidence that there exists a computer or any "removable storage device" that actually contain the specific information requested. Therefore, this court's order is not based on any finding that any responsive documents are in fact being withheld, but rather on the fact that the parameters of the search are unclear and, thus, this court is unable to determine whether the search was legally sufficient.

**4.** Counsel for Mrs. Clinton argue that the court should deny plaintiffs' motion as to request numbers 20, 25, and 39 without further consideration because the plaintiffs failed to meet and confer with them on these issues, as required by Local Rule 108(m). However, by their own admission, the parties did have a substantive discussion regarding the plaintiffs' motion during a telephone conference on June 8, 1998, prior to the filing of

■ The plaintiffs can only obtain "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" or "information reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Thus, in order to compel the production of documents, they must first demonstrate the relevance of those documents. *See Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C.1999) (stating that the party seeking to compel information must first demonstrate its relevance); *Alexander v. FBI*, 186 F.R.D. 21, 45 (D.D.C.1998) (same). As noted above, this case involves allegations that the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations. It is not, therefore, self-evident what relevance correspondence about White House passes and security clearances may have to this case.

■ The plaintiffs, however, do nothing in their motion or reply to establish the relevance of their request. Rather, they rely only on their conclusory allegation that "the request is clearly for information relevant to the subject matter of this case, and is reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs' Reply at 14. Such a statement is insufficient to satisfy their burden of establishing the relevance of their request. Therefore, to the extent that the plaintiffs seek correspondence regarding White House passes and security clearances, their request is denied.

Regarding any correspondence between the defendants regarding FBI files, however, Mrs. Clinton once again stated only that she would provide documents within her possession. As neither Mrs. Clinton nor her counsel ever represent that she included all documents within her control in her search, Mrs. Clinton shall also include in her supplemental response details of the search performed in response to this request.

4. *Requests Numbers 25 and 39.*

Request number 25 seeks all documents to or from James Carville or the Education and Information Project, Inc. Request number 39 seeks all documents, not previously produced, regarding communications between Mrs. Clinton or her office and Mr. Nussbaum, Mr. Kennedy, persons in the Office of Personnel Security ("OPS"), and persons in the Office of Records Management ("ORM"). Mrs. Clinton objected to these requests on the grounds that they were overly broad and sought discovery not relevant to the pending case. In support of this objection, counsel for Mrs. Clinton points out that these requests are completely unlimited in subject area.

Plaintiffs argue that these requests are not overbroad because, as Mrs. Clinton has no official status in relation to the conduct alleged in their complaint, any communication she may have had with the named individuals has the potential of leading to the discovery of admissible evidence. This argument, however, makes no sense. Mrs. Clinton's "lack of official status" with regard to conduct alleged in this case does not mean that any contact she has with these individuals will be relevant to this case. She clearly may have other reasons for communicating with these individuals that are totally unrelated to this case. Therefore, this court will limit the plaintiffs' request to only those documents relating to the issues the court has already deemed discoverable. Specifically, these issues are "Filegate", the obtaining or misuse of the FBI files of former Bush and Reagan

the plaintiffs' motion to compel, and this discussion included the request numbers at issue. *See* Opposition of Hillary Rodham Clinton at 7 & n. 1, 8 (listing the issues that counsel for Mrs. Clinton, Paul Gaffney, discussed with the plaintiffs during the Local Rule 108(m) conference, including their responses to request numbers 20, 25, and 39). In addition, per review of the submissions of the parties, it is not clear what more the plaintiffs could have discussed during this conference, short of simply acquiescing to the defense counsel's arguments. Accordingly, given that these specific requests were in fact discussed prior to the plaintiffs' filing of their motion, the court finds that the requirements of Local Rule 108(m) have been met. The court further notes that, as the purpose of Local Rule 108(m) is to narrow the areas of disagreement and not to create another layer of review for the courts, it will not nitpick about the minute details discussed by the parties.

Administration employees, the possible misuse of Billy Ray Dale's file, and the improper release of information regarding Linda Tripp and Kathleen Willey.

Defense counsel argue in their opposition that to the extent the requests are narrowed to such communications that refer or relate to FBI files or background summaries, then the requests become duplicative of the plaintiffs' first set of requests for documents. As discussed above, however, once the relevance of the discovery sought is established, the burden is on the party objecting to the discovery to show why it should not be permitted. *See Alexander v. FBI*, 193 F.R.D. at 2–3 (D.D.C.2000) (re: First Set of Interrogatories); *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C.2000) (re: Third Set of Interrogatories). By simply objecting to the request as duplicative without any further elaboration, Mrs. Clinton fails to satisfy this burden. Furthermore, the current request, as this court has defined it, includes issues beyond just FBI files or background summaries.[5] Therefore, Mrs. Clinton shall produce any documents, including those not in her possession but still within her control, that are responsive to these requests as modified by the court. If any of the documents previously provided to the plaintiffs are responsive to these requests, Mrs. Clinton shall refer to those documents specifically.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [752] to Compel Defendant Hillary Rodham Clinton to Provide Appropriate Responses to Plaintiffs' Second Requests for Production of Documents is GRANTED IN PART and DENIED IN PART. Defendant Hillary Clinton shall, within 20 days of this date, provide a supplement response describing the search performed in conjunction with the plaintiffs' requests numbers 1, 2, 14, 15, 17, 18, 20, and 24, as discussed in this opinion. She shall also provide, within 20 days of this date, additional responses to requests numbers 25 and 39, as discussed in this opinion. Any additional responsive documents not previously produced shall also be provided to plaintiffs within 20 days of this date.

SO ORDERED.

5. In particular, the release of letters sent from Kathleen Willey to President Clinton, while pertaining to government files maintained by the ORM, did not involve files from the FBI.