**ROSIE D., et al., Plaintiffs,**

v.

**Mitt ROMNEY, et al., Defendants.**

**No. CIV.A. 01–30199–MAP.**

United States District Court,
D. Massachusetts.

April 14, 2003.

---

Steven J. Schwartz, Center for Public Representation, Cathy E. Costanzo, Center for Public Representation, Northampton, MA, James C. Burling, Sara Jane Shanahan, Gabrielle E. Foote, Samantha J. Morton, Hale & Dorr, LLP, Boston, MA, Frank J. Laski, Mental Health Legal Advisors Committee, Philadelphia, PA, for Plaintiffs.

Stephanie S. Lovell, Daniel J. Hammond, Deirdre Roney, Attorney General's Office, Boston, MA, Bart Q. Hollander, Office Of the General Counsel, Cambridge, MA, Timothy M. Jones, Attorney General's Office, Springfield, MA, for Defendants.

## MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFFS' MOTIONS TO COMPEL (Doc. Nos. 57 and 59)

NEIMAN, United States Magistrate Judge.

Plaintiffs in this class action have sued various executive officials of the Commonwealth of Massachusetts who administer the state's Medicaid program. In essence, Plaintiffs allege violations of several provisions of the federal Medicaid Act, in particular, those provisions which establish the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program. *See* 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(43), 1396d(a)(4)(B), and 1396d(r)(5). *See also* 42 C.F.R. §§ 441.50, 441.56(a) and 441.61(b)(2003).

Presently at issue are Plaintiffs' two motions to compel in which they request production of documents served both upon the defendants—the Division of Medical Assistance ("DMA"), the Executive Office of Health and Human Services and the Executive Office of Administration and Finance—and a number of non-party agencies that are involved, to varying degrees, in the delivery of behavioral health ser-

vices. For the reasons which follow, the court will allow both motions.

## I. Standard of Review

Plaintiffs' motions are brought pursuant to Fed.R.Civ.P. 26, 34 and 37. Rule 26 explains general provisions governing discovery. For its part, Rule 34 describes the procedures for requesting documents which are "within the scope of [discovery] and which are in the possession, custody or control of the party upon whom the request is served." Fed. Ru. Civ. P. 34(a). It also states that "[a] person not a party to the action may be compelled to produce documents." Fed.R.Civ.P. 34(c). Finally, Rule 37 allows a discovering party to file a motion to compel the opposing party to comply with the proponent's properly-filed discovery requests.

## II. Discussion

■ Plaintiffs' two motions are somewhat discrete. In their first motion, Plaintiffs seek certain documents from each of the named defendants. Plaintiffs' second motion seeks similar documents from non-party agencies that Plaintiffs claim are within DMA's control. In many respects, the motions raise one underlying issue, namely, whether the responding parties can be compelled to disclose certain personal data concerning clients of the various agencies. The second motion, by its very nature, raises a second issue, i.e., whether the documents sought from the non-defendant agencies are nonetheless within DMA's control. It is these two overriding issues which the parties ask the court to resolve. In the end, the court finds in Plaintiffs' favor with respect to both issues.

### A.

With respect to the main underlying issue, Defendants' argument against the disclosure of personal data is grounded in the Massachusetts Fair Information Practices Act ("FIPA"), Mass. Gen. L. ch. 66A, § 1 *et seq.* Section 2(k) of FIPA specifically provides that state agencies must "maintain procedures to ensure that no personal data [is] made available in response to a demand for data made by means of compulsory legal process, unless the data subject has been notified of such demand in reasonable time that he may seek to have the process quashed." Mass. Gen. L. ch. 66A, § 2(k).

■ There appears to be no dispute between the parties that some of the information contained within the documents sought by Plaintiffs falls within the ambit of "personal data" as that term is defined in FIPA. *See* Mass. Gen. L. ch. 66A, § 1. Nor does there appear to be a dispute that, as a precondition to disclosure of such data, a party to litigation, in the normal course, must first demonstrate that "the collective public interest in disclosure warrants an invasion of the data subject's privacy." *Allen v. Holyoke Hosp.*, 398 Mass. 372, 496 N.E.2d 1368, 1374 (1986). This balancing test, in essence, was adopted by the First Circuit in *In re Hampers*, 651 F.2d 19, 22–23 (1st Cir.1981).

Before applying that test, however, two things must be understood. First, this case has been certified as a class action by District Judge Michael A. Ponsor. (*See* Document No. 13, margin endorsement.) That ruling necessarily entailed a finding under Rule 23 of the Federal Rules of Civil Procedure that the persons representing the class—those attorneys who, on behalf of the class, now seek to compel the documents presently at issue—are able to fairly and adequately represent the interests of the class. *See In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1534–35 (D.Mass.1991).

Second, shortly after the instant complaint was filed, the parties agreed on a protective order which was approved by the court on December 13, 2001. (See Document No. 8, margin endorsement.) An amended protective order was thereafter jointly submitted and approved by the court on January 9, 2002. (See Document No. 15.) In Plaintiffs' view, the protective order, as amended, was designed to ensure that confidential information of all class members could be released to Plaintiffs' counsel and their agents. Defendants, for their part, do not read the protective order so broadly. (See Defendants' Opposition (Document No. 62), Exhibit A (Affidavit of Deirdre Roney) ¶ 10.)

Notwithstanding these differences, Defendants assert, in what appears to be the main thrust of their argument, that Plaintiffs simply do not need any of the confidential information they presently seek in order to persuade the court, with respect to the underlying legal issue in the case, that their construction of the Medicaid Act is the correct one and that Defendants are therefore required to begin making certain screening, diagnosis and treatment services available to Plaintiffs in a home-based manner. In fact, Defendants concede that "with limited exceptions, they do not currently make such services available in a home-based setting." (Defendants' Opposition at 2.) Rather, Defendants assert, the Medicaid Act, read correctly, creates no such enforceable duty, but allows states to choose, within general federal parameters, how to deliver Medicaid services and grants states discretion to limit the extent of services for which they will pay. (*Id.*) "These dueling constructions of the federal Medicaid statute," Defendants maintain, "form the basis of the dispute in this case." (*Id.*) There being no factual dispute, Defendants argue, Plaintiffs' interest in the personal data is not sufficient to overcome the state confidentiality policies contained within FIPA.

Plaintiffs acknowledge Defendants' concession, at least in part, but contend that there still are factual disputes warranting the production of client-specific information. The issue before the court can only be one of law and not of fact, Plaintiffs argue, if Defendants "further concede that class members have a medical need for home-based services, and that these services are not being provided by the Medicaid program." (Plaintiffs' Reply Brief (Document No. 66) at 3.) Were such a concession made, Plaintiffs continue, there would indeed be no necessity for the production of documents and the parties could move forthwith to address the underlying legal issue before the court.

After exploring this dispute at oral argument, the court concludes that Defendants, for understandable reasons, are not yet prepared to make the second factual concession, i.e., that class members had a medical need for home-based services. Accordingly, the court is left with no choice but to conclude that factual discovery must necessarily continue. More importantly for purposes here, the court concludes that the balance of interests clearly tips in favor of Plaintiffs' access to the information they seek, particularly given the fact that Plaintiffs' counsel are the very lawyers deemed capable of representing the class of individuals whose personal information is at issue. Accordingly, the court will allow Plaintiffs' first motion and will order that the information be produced forthwith, subject to the terms and conditions of the parties' amended protective order.

## B.

■ The second issue—which applies to Plaintiffs' second motion—is whether, within the strictures of Rule 34, the docu-

ments which Plaintiffs seek "are in the possession, custody, or control" of DMA upon whom the request has been served. Plaintiffs say "yes," Defendants say "no." Again, the court is convinced that Plaintiffs have the better argument.

■ As used in Rule 34, the concept of "control" exists where a party has a legal right to obtain documents. *See, e.g., Calzaturficio v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38–39 (D.Mass.2001) (citations omitted). Such "control" may be established by the existence of a principal-agent relationship, *see, e.g., McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C.1999), or a legal right pursuant to a contractual provision, *see Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928–29 (1st Cir.1988), *on remand sub nom. Anderson v. Beatrice Foods Co.*, 127 F.R.D. 1, 10 (D.Mass.1989).

In the case at bar, DMA delegates the delivery of behavioral health services to several entities which, in turn, are authorized to engage subcontracted service providers. At least one of those entities, the Massachusetts Behavioral Health Partnership (the "Partnership"), manages the delivery of behavioral health services to Medicaid-eligible individuals enrolled in a primary care clinician's plan, including all EPSDT services to children with behavioral, emotional or psychiatric impairments. As to those Medicaid-eligible individuals who are not enrolled in the primary care clinician plan or who may have other insurance, it appears uncontested that they receive their EPSDT services through four managed care organizations that have also contracted with DMA: Neighborhood Health Plan, Fallon Community Health Plan, Network Health, and Boston Medical Center HealthNet. Federal law requires that DMA ensure that the Partnership and the four managed care entities provide such services in accord with the Medicaid Act. *See* 42 U.S.C. § 1396u–2.

DMA's contract with the Partnership requires the Partnership to maintain books, records and other compilations of data pertaining to the contract and provides, as well, that DMA has the right, upon reasonable notice, to examine and copy the information. Plaintiffs assert, without any evident opposition by Defendants, that DMA's contracts with the four managed care entities likely contain virtually identical provisions.[1]

Given these contractual provisions, there is little doubt that Defendants have the right to control and obtain the documents that are in the possession of the various non-defendant agencies. *See Calzaturficio*, 201 F.R.D. at 38–39 ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.") (citations and internal quotation marks omitted); *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12, 14 (D.Mass.1988) ("A party has 'control' over a document if that party has a legal right to obtain those documents."). *See also Alexander v. FBI*, 194 F.R.D. 299, 301–02 (D.D.C.2000). That being so, and the information having been deemed by the court to be discoverable, Plaintiffs' second motion will be allowed and subject to the parties' amended protective order. Defendants' efficiency argument, i.e., that Plaintiffs resort to subpoenas on the Partnership and the four managed care entities, has little merit.

---

1. Defendants' opposition makes no mention of the four managed care entities that directly contract with DMA. Defendants concentrate their opposition on a letter written to an As-sistant Attorney General by counsel to the Partnership. (*See* Defendants' *Opposition*, Exhibit A.)

### III. CONCLUSION

For the reasons stated, Plaintiffs' motions are ALLOWED. Defendants are to produce the requested documents forthwith.

IT IS SO ORDERED.