Linda R. TRIPP, Plaintiff,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al., Defendants.

No. CIV. 99–2554 RCL.

United States District Court, District of Columbia.

June 14, 2000.

Stephen M. Kohn, David A. Colapinto, Michael D. Cohn, Kohn, Kohn, & Colapinto, Washington, DC, for Plaintiff.

David W. Ogden, Acting Asst. Atty. General, Wilma A. Lewis, United States Attorney, Anne L. Weisman, Sylvia T. Kaser, U.S. Department of Justice, Civil Division: Federal Programs Branch, Washington, DC, for the Government Defendants.

William J. Murphy, Murphy & Shaffer, Baltimore, MD, for Kenneth Bacon.

William J. Hardy, Karalekas & Noone, Washington, DC, for Clifford Bernath.

*MEMORANDUM AND ORDER*
(RELATED CASE OBJECTION)

LAMBERTH, District Judge.

This matter comes before the court on Defendants Executive Office of the President ("EOP"), Department of Defense ("DoD"), Kenneth Bacon and Clifford Bernath's Objections under Local Civil Rule 40.5 to Plaintiff's Related Case Designation.[1] Upon consideration of defendants' objections, plaintiff's response thereto, the applicable law, and for the reasons set forth below, the court hereby determines that this case is related, under Local Rule 40.5, to *Cara Alexander et al. v. FBI, et al.,* Civ. Nos. 96–2123 & 97–1288, and therefore, defendants' objection to plaintiff's related case designation is DENIED.

1. The court delayed ruling on this motion pending its resolution of defendant's recusal motion.

## I. BACKGROUND

The present case concerns the release of information from Linda Tripp's security clearance application by the Department of Defense ("DoD") to Jane Mayer, a reporter from *The New Yorker* magazine. The allegations concerning the circumstances of the release are as follows: On March 12, 1998, Mayer contacted Kenneth Bacon, the Assistant Secretary of Defense for Public Affairs, who was the principal DoD spokesman. Amended Complaint, ¶ 70. Mayer indicated she was writing a story on Tripp and had uncovered information suggesting that Tripp had been arrested in 1969. She wanted to know whether Tripp had disclosed any prior arrests on her security clearance application. *Id.* Following his call from Mayer, Bacon enlisted his deputy, Clifford Bernath to obtain the information she requested. The next day, after obtaining the desired information, Bernath contacted Mayer, with Bacon's approval, and informed her that Tripp had denied having an arrest record on her clearance application, a form also known as a "DD Form 398." *Id.* ¶ 79. Later that same day, *The New Yorker* published Mayer's article, entitled "Portrait of a Whistleblower," which included the information from Tripp's Form 398 provided by DoD. *Id.* ¶ 83. The original complaint in this case was filed in September 1999, and named as defendants the Executive Office of the President ("EOP"), the Department of Defense ("DoD"), Kenneth H. Bacon, Assistant Secretary of Defense, Clifford Bernath, Principal Deputy Assistant Secretary of Defense, and Jane and John Does Nos. 1 through 99. Tripp alleges that the release of information contained in her security clearance application violated her rights under the Privacy Act, 5 U.S.C. § 552a (1994). *See* Complaint, Count I, ¶¶ 30–50; Count II, ¶¶ 51–82 (Filed September 27, 1999). She also seeks recovery from certain named individual defendants, Kenneth Bacon, Clifford Bernath, and Jane and John Does 1–99, for an alleged conspiracy to violate Tripp's civil rights under the Civil Rights Act of 1871, 17 Stat. 13, cl. 2 and 42 U.S.C. § 1985(2). *See* Complaint, Count III, ¶¶ 83–92. Additionally, Tripp brings pendent state common law claims against defendants Bacon and Ber-

nath based on the torts of invasion of privacy and civil conspiracy. *See* Complaint, Count IV, ¶¶ 93–101.

When filing the original complaint in September 1999, plaintiff's counsel designated this action as related to *Alexander v. FBI, et al.,* Civ. Nos. 96–2123 & 97–1288, which is currently pending before this court, because the case involved common issues of fact with *Alexander.* Accordingly, under Local Rule 40.5, which governs related cases, this case was automatically assigned to this court. Subsequently, in January 2000, Tripp filed an amended complaint, incorporating her prior claims and adding further allegations. In the amended complaint, Tripp adds the Federal Bureau of Investigation ("FBI") as a codefendant. With respect to the FBI, Tripp alleges, *inter alia,* that the FBI willfully and intentionally released plaintiff's FBI files to defendant EOP and others employed at the White House. Amended Complaint, Count II, ¶ 57–64 (Filed January 14, 2000).

More commonly known as "Filegate," the *Alexander* case has been filed as a class action, in which the plaintiffs seek class certification, alleging that "their privacy interests were violated when the FBI improperly handed over to the White House hundreds of files of former political appointees and government employees from the Reagan and Bush administrations." *Alexander v. FBI, et al.,* 186 F.R.D. 180, 182 (D.D.C.1999). Specifically, the *Alexander* plaintiffs allege that the EOP improperly obtained the confidential FBI files of more than 700 individuals formerly employed by the White House. *See Alexander v. FBI, et al.,* Civ. Nos. 96–2123 & 97–1288, Complaint, ¶¶ 15–16 (Filed September 12, 1996).

Notably, the release of information on Tripp by the DoD has been the focus of considerable discovery in *Alexander.* In *Alexander,* the court determined that discovery into the DoD release would be relevant if it established circumstantial evidence of White House misuse of government information, similar to the conduct alleged in Filegate. *See Alexander v. FBI, et al.,* 186 F.R.D. 154, 158 (D.D.C.1999) ("This line of discovery is appropriate because plaintiffs

may seek to create the inference that if the White House misused government information for political purposes in the case of the Tripp release, such evidence may be circumstantial evidence of the similar conduct alleged in plaintiffs' complaint."). Thus, the court authorized discovery into the circumstances surrounding the release, to the extent that the inquiry was "reasonably calculated to lead to the discovery of a White House connection to the release of Tripp's private government information." *See Alexander v. FBI, et al.*, 188 F.R.D. 111 (D.D.C. 1998).

In objecting to plaintiff's related case designation, defendants contend that the present case and *Alexander* do not involve common issues of fact and that judicial efficiency would not be served by assigning the case to the same judge. Instead, defendants assert that the circumstances of the Tripp release are a "tangential avenue of inquiry" in *Alexander*, which presents a "mere overlap of some facts," and thus, does not create a common issue of fact for purposes of the related case rule.

In response, plaintiff asserts that because the claims alleged in this case against defendants EOP and FBI are based on the same misconduct as alleged against those defendants in *Alexander*, the two cases involve "common issues of fact" under Rule 40.5(a)(iii). To that end, plaintiff points to the considerable litigation and discovery in *Alexander* regarding the Tripp release as establishing the requisite nexus between the two cases for purposes of Rule 40.5. Additionally, plaintiff maintains that, given the extent of discovery and litigation on the Tripp matter in *Alexander*, assignment of the present case to this court under Rule 40.5 would promote the interests of judicial efficiency and economy.

## II. DISCUSSION

■ Local Rule 40.5 establishes an exception to the general rule of random assignment of cases in the District Court. *See* D.C. LCvR 40.3(a) (stating that "[e]xcept as otherwise provided by these Rules, civil, criminal and miscellaneous cases shall be as-

signed to Judges of this court selected at random..."). More commonly referred to as the "related case rule," Rule 40.5 authorizes the assignment of a new case to the judge to whom the oldest related case is assigned. *See* D.C. LCvR 40.5(c)(1). With respect to civil cases, Local Rule 40.5 provides that "cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction ...." D.C. LCvR. 40.5(a)(3)(1999). "Judicial economy is, in part, the policy underlying the 'related case' rule." *Alberti v. General Motors Corp.*, 600 F.Supp. 1024, 1025 n. 3 (D.D.C.1984). The party seeking to avoid random assignment bears the burden of demonstrating that the case is a related case under an applicable subsection of Rule 40.5. When a defendant objects to a case being designated as a related case, the judge to whom the case is assigned determines whether the cases are related. D.C. LCvR 40.5(c)(3).

■ In opposing the related case designation and requesting that this court transfer this case back to the Calendar Committee for reassignment, defendants rely on this court's prior rulings in *Sculimbrene v. Reno*, Civ. No. 99–2010, Memorandum & Order (D.D.C. January 24, 2000), *Dale v. Executive Office of the President*, Civ. No. 99–2453, Order (D.D.C. January 24, 2000), and *Barr v. Executive Office of the President*, Civ. No. 99–1695, Order (D.D.C. January 24, 2000). In urging the court to find that the present case is not related to *Alexander*, defendants make much of the fact that, like the plaintiffs in *Sculimbrene, Dale*, and *Barr*, Tripp is not similarly situated to the *Alexander* plaintiffs because she is a current, not a former, U.S. government employee. In addition, relying on *Sculimbrene*, defendants maintain that even if Tripp would be an important witness in *Alexander*, that fact is not sufficient to make the *Tripp* case related.

But this court finds the present case to be distinguishable from *Sculimbrene*. And, despite defendants' insistence, the fact that Tripp remains an employee of the DoD is not dispositive of the issue of whether this case

presents common issues of fact with *Alexander.* Rather, unlike Sculimbrene, who would be a fact witness in *Alexander* only on a discrete and tangential aspect of that case, the common factual issues presented in *Tripp* and *Alexander* are far more substantial. In fact, the distinction between *Sculimbrene* and this case becomes readily apparent when one considers the degree of Sculimbrene's relation to the underlying allegations in *Alexander.* Sculimbrene was a Special Agent with the FBI assigned to the White House, whose White House duties were terminated in April 1996, and who subsequently retired from the FBI in August 1996. During his assignment to the White House, he was assigned to complete background checks on individuals hired by the White House. Among the persons he was tasked with investigating was Craig Livingstone. Over the course of completing Livingstone's background investigation, Sculimbrene interviewed Bernard Nussbaum. Subsequently, Sculimbrene wrote a memorandum memorializing his interview with Nussbaum, in which he noted that Nussbaum had stated that Livingstone was hired at the request of Hillary Rodham Clinton. Based on these facts, in *Sculimbrene,* the court determined that even though Sculimbrene was "clearly an important witness in the *Alexander* case," "the overlap of any common issues of fact is quite minimal and plainly insufficient to deem this a related case." *Sculimbrene v. Reno,* Civ. No. 99–2010, Memorandum & Order, at 2 (D.D.C. January 24, 2000). Thus, the court concluded that although Sculimbrene would be an important fact witness in *Alexander,* his relevance would only pertain to a discrete aspect of the case, and therefore the overlap of common issues of fact was insufficient to make the cases related.

By contrast, the issues of fact presented in the *Tripp* case have a far more substantial nexus with the central allegations in *Alexander.* To begin with, in allowing discovery into the Tripp release in *Alexander,* this court has already determined that if "the White House misused government information for political purposes in the case of the Tripp release, such evidence may be circumstantial evidence of the similar conduct alleged in plaintiffs' complaint." *Alexander,*

186 F.R.D. at 158. Moreover, the very facts alleged in this case are at issue and remain contested in *Alexander,* and have spawned a plethora of litigation and discovery disputes, including numerous motions to compel, claims of privilege and depositions. *See Alexander v. FBI, et al.,* Civ. Nos. 96–2123 & 97–1288, Memorandum Opinion, at 55 (D.D.C. June 5, 2000)(granting in part plaintiffs' request for an ARMS e-mail search, which would include Tripp's name as a search term); *Alexander v. FBI, et al.,* 194 F.R.D. 305, 309–10 (D.D.C.2000) (addressing Tripp release in the course of ruling on plaintiffs' motion to compel production of documents from EOP); *Alexander v. FBI, et al.,* 194 F.R.D. 299, 302 (D.D.C.2000) (addressing Tripp release in context of plaintiffs' motion to compel responses by Hillary Rodham Clinton to plaintiffs' second request for production); *Alexander v. FBI, et al.,* 192 F.R.D. 37, 38 (D.D.C.2000) (addressing plaintiffs' motion to compel the production of documents and testimony from non-party DoD); *Alexander v. FBI, et al.,* 186 F.R.D. 170, 171 (D.D.C.1999) (addressing plaintiffs' motion to compel further testimony and production of documents from Kenneth Bacon); *Alexander v. FBI, et al.,* 186 F.R.D. 144, 145 (D.D.C. 1999) (addressing plaintiffs' motion to compel further testimony from J. Lowe Davis); *Alexander v. FBI, et al.,* 186 F.R.D. 123, 124 (D.D.C.1998)(granting plaintiffs' motion to unstay the deposition of Linda Tripp); *Alexander v. FBI, et al.,* 186 F.R.D. 78, 82 (D.D.C.1998)(addressing, *inter alia,* plaintiffs' motion to compel further testimony and production of documents from Clifford Bernath); *Alexander v. FBI, et al.,* 186 F.R.D. 71, 73–76 (D.D.C.1998)(addressing non-party J. Lowe Davis' motion for protective order); *Alexander v. FBI, et al.,* 186 F.R.D. 66, 67 (D.D.C.1998)(addressing plaintiffs' motion for clarification regarding deposition of Kenneth Bacon). Thus, as the record of litigation cited above demonstrates, this case hardly presents a "mere overlap of some facts" as defendants advance. To the contrary, this case involves substantial common issues of fact sufficient to make it related to *Alexander* under Local Rule 40.5. And, notwithstanding the significant overlap of factual issues, considerations of judicial economy

further counsel in favor of finding that this case is related to *Alexander*.

## III. CONCLUSION

For the reasons set forth above, the court hereby DENIES Defendant's Objection to Plaintiff's Related Case Designation.

SO ORDERED.